CLYDE *et al. v.* STEAM TRANSP. CO.

*(Circuit Court, E. D. North Carolina. August 18, 1888.)*

1 MARITIME LIENS—UNDER STATE STATUTES—GENERAL NATURE.
The claim of a material-man for supplies and repairs furnished to a vessel in a home port is, if a lien be given therefor by a state statute, a maritime lien, and is entitled to the same precedence that a like claim for supplies and repairs furnished in a foreign port has by the law of nations.

2. SAME—PRIORITY—MORTGAGE.
The lien of a material-man for supplies and repairs furnished in a home port, given by a state statute, is entitled to priority over a mortgage on the vessel repaired, although such mortgage had been duly recorded before such supplies and repairs were furnished.

*(Syllabus by the Court.)*

In Equity.

*Simmons & Manly* and *W. W. Clark,* for petitioners.
*F. H. Busbee,* for mortgagee.

SEYMOUR, J.   This is a contest between material-men, who have furnished repairs to the steam-boat Elm City in her home port, and who have a lien under the North Carolina statute, and the owners of a prior recorded mortgage for the proceeds of the sale of the boat. · The fund will not, in case the petitioners are first paid, be enough to discharge in full the amount of the mortgage.

There is no decision of the question which is of controlling force here, as the point has not been decided by the supreme court, nor by any circuit court of the Fourth circuit.   In the Fifth circuit, (*The De Smet,* 10 Fed. Rep. 483, and *The Josephine Spangler,* 11 Fed. Rep. 440,) and in the Seventh, (*The Kate Hinchman,* 7 Biss. 238,) priority has been given to the mortgage; but the opinion of the circuit judge of the Fifth circuit is in favor of the lien of the material-man, and his decision for the mortgagee is based upon his unwillingness to reverse that of his predecessor, in the absence of any adjudication upon the point by the supreme court. The opinion of DRUMMOND, C. J., in the *The Kate Hinchman,* rests upon a misconception of what is said in *The Lottawanna,* 21 Wall. 558, and not upon that jurist's own opinion of the law.   On the other hand, priority has been given to the lien, under state statutes, of the material-men, in the Second circuit, (*The John Farron,* 14 Blatchf. 24;) in the Third circuit, (*The Kingston,* 23 Fed. Rep. 200, and *The Venture,* 26 Fed. Rep. 285;) and in the Sixth circuit, (*The General Burnside,* 3 Fed. Rep. 228, and *The Guiding Star,* 18 Fed. Rep. 263.)   The decisions cited, with others which have not been cited, but which are referred to in the above cases, will, if examined, show that the opinion which at first seemed to be, perhaps, the prevailing one, viz., that the lien given by state statutes to material-men in the home ports did not rank with maritime liens, which seems to have been founded upon English authorities, has gradually yielded to an opinion based upon the general principles of maritime law, and in part upon the justice of the position, in favor of the priority of the lien. Independently of any legislation, by both the civil law and the law of nations, material-men have a lien not only on proceeds, but on the ship itself; but by the common law of England, which is held to be binding on her admiralty courts, material-men have no lien upon an English ship *in specie* for the costs of materials supplied in England.   Such is the rule, and such its limitations, as given in the case of *The Neptune, Cumberlege,* 3 Hagg. 136, 139.   The general rule of lien on the ship for supplies is recognized.   The exception is that it does not apply to an English ship for supplies furnished in England.   The lien, as established by the civil law, was originally followed to its full extent in the admiralty courts of that nation, and it was only after a long contest that the exception in favor of English ships was introduced by decisions of the courts of common law and the house of lords in the reign of Charles II.   Abb. Shipp. *149n; Pritch. Adm. Dig. *226, note 1.   Although the continental practice would have suited better the condition of busi-

ness here, with respect to ship supplies, our courts felt themselves bound by the English precedents. In the English courts it was held that in admiralty Irish and Scotch were foreign vessels, and, following that authority, and also for reasons growing out of the nature of our government, the United States courts held the states to be foreign as to one another for purposes of admiralty jurisdiction. Yet it is difficult to sustain on reason a decision that, with respect to a boat running between Newbern and Norfolk, a material-man in Newbern shall not have, and a material-man in Norfolk shall have, a lien for supplies and repairs furnished to the vessel. The result might be to compel the owners of a boat belonging to the former place, if they happen to be as insolvent as was the corporation owning the Elm City, to have all their repairs done in the latter place. To remedy the evils resulting from this state of the law, many of the sea-board and lake states, and, among the former, North Carolina, gave by statute liens to material-men on vessels repaired in a home port. It was held, after some conflict and hesitation, that, while the state courts could not enforce such liens by proceedings *in rem*, the federal courts might. The only question which remained unsettled was as to the nature of the lien. If it be a maritime one it must stand on an equality with other maritime liens of the same class, and be preferred to a mortgage, even of earlier date; the latter not being maritime in its nature. Evidently the character of the lien depends on the nature of the contract. A contract to supply or repair a vessel, wherever made, was by the law of nations a maritime contract. The limitation put by the English courts upon the universality of the lien did not affect the nature of the contract, but only the remedy. When the lien is restored by statute it takes the same position it had before it was abrogated by judicial decisions. The lien of the material-man for supplies and repairs in a foreign port has precedence over a mortgage because it is a maritime lien. When by statute a lien is given for repairs in a home port, the subject of the contract being the same, and the remedy being made the same, it must have the same precedence.

It is said in behalf of the mortgagees in this case that they did not authorize the repairs put on the Elm City, and that the work was done pending an action by them as stockholders in the defendant corporation to dissolve the corporation, and as mortgagees to foreclose. I am assuming, what is not material to the decision, that both suits are by substantially the same parties. I know of no principle upon which it can be held that these facts affect the lien. If the plaintiffs had been successful in procuring the appointment of a receiver *pendente lite*, they would doubtless have temporarily stopped the progress of the repairs. But they have since purchased, at the price of about the face of their mortgage, at much less than what the Elm City either cost or was valued at in any of the affidavits read on the hearing of this case; and they have the benefit of the repairs. I know of no reason to suppose them not to be worth their cost to the present owners of the boat. It would, under the circumstances, be a hardship if the law did not allow the material-men to be first paid.

The fact that the lien of petitioners is a maritime one answers the contention that the material-men lost their lien by surrendering possession of the boat; and I therefore am not called upon to investigate the question made on the argument, of whether they surrendered the Elm City or it was taken from them.

The decision is not put upon anything peculiar to the case, but upon a general rule of admiralty law, viz.: The claim of a material-man for supplies and repairs furnished to a ship in a home port is, if a lien is given therefor by a state statute, a maritime lien; and has the same priority that a similar claim for supplies furnished in a foreign port has under the law of nations.